UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KARLA J.B., | ) | No. 19 CV 50019 |
| | ) | |
| Plaintiff, | ) | Magistrate Judge Iain D. Johnston |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karla J.B.[1] brings this action under 42 U.S.C. § 405(g) seeking remand of the decision denying her social security benefits. For the reasons below, Plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

### I. FACTUAL BACKGROUND

**A. Relevant Medical History**

Plaintiff was diagnosed with essential tremors[2] in 2008. R. 311. The medical records indicate Plaintiff was treated by various providers from April 16, 2012 through May 19, 2017 for tremors, hypothyroidism, and hypertension. *See* R. 209-345. Because Plaintiff's arguments focus on the ALJ's analysis of her tremor impairment, the Court focuses on the medical evidence related to the tremors.

---

[1] Plaintiff's last name has been redacted in accordance with Internal Operating Procedure 22.
[2] Essential tremors are defined as "[a]n action tremor of 4-8 Hz frequency that usually begins in early adult life and is limited to the upper limbs and head; called familial when it appears in several family members." STEDMAN'S MEDICAL DICTIONARY 935180 (West 2014).

Plaintiff visited the emergency room on May 27, 2014 for headache, chest pressure, and a "funny feeling" on the right side of her face. R. 215. In a follow up visit on May 29, 2014, Plaintiff reported a history of hand tremors but that they were "under good control" with Propranolol, though the tremors had worsened coincidentally with the recent ER visit. *Id*. Plaintiff had normal grip and upper-extremity strength, though hand tremors were noted as present in both hands, worse in the left. R. 216. She was referred to neurology for the tremors. R. 217.

Plaintiff saw Doctor Jude Perez for right eye pain on May 30, 2014. The visit report indicated Plaintiff's history of tremors, though noted on exam that she had full range of motion in all extremities and did not note that Plaintiff exhibited tremors. R. 300-01.

On another ER follow-up visit on June 5, 2014, Plaintiff reported feeling much better and that her tremor had improved, and on exam her hand tremors were noted as "stable" and "significantly improved." R. 217-18. Plaintiff underwent three brain MRIs in June and July 2014, which revealed mostly normal results. R. 246-48, 310-11.

At a visit with Dr. Malgorzata Bach on November 7, 2014, Plaintiff was taking Klonopin for her tremors which improved them by 30%. R. 310-11. On examination Plaintiff exhibited tremors in both hands, a mild head tremor, and a voice tremor, though finger to nose testing and muscle tone was normal. R. 312. She was prescribed Primidone at 50 mg. R. 313.

At another ER follow up on November 29, 2014, Plaintiff reported that her tremors were getting worse. Plaintiff was noted as experiencing tremors in both hands with gross motor movements when asked to pick up an alcohol container in the exam room, again left hand worse than right. R. 222. She was again prescribed Klonopin for the tremors. R. 223.

On December 18, 2014, Plaintiff visited with Dr. Moshin Khan for evaluation of her tremors. She reported tremors aggravated by action and that the Primidone she was prescribed was not working. On examination, Plaintiff exhibited moderate left arm, head, and neck tremors. However, she exhibited normal reflexes, strength in all extremities, and gait. R. 320-22. Dr. Khan prescribed Sinemet. R. 324. At a follow up on March 12, 2015, Dr. Khan noted Plaintiff's tremors had improved with Sinemet, and at this appointment Plaintiff did not exhibit any tremors on examination. R. 327-28. Dr. Khan continued Plaintiff's Sinemet regimen. R. 330.

Plaintiff next visited neurologist Dr. Roland H. Brilla, who wrote in an August 14, 2015 report that Plaintiff had complained of postural and action tremors in her hands for approximately the previous 10 years and in her head for the last few months. Dr. Brilla examined Plaintiff, who exhibited action tremors "particularly marked near the end point and then are at least moderate in severity" and postural tremors, though otherwise exhibited normal senses, gait, and rapid alternating movement. R. 250-51. Dr. Brilla again diagnosed essential tremors and increased Plaintiff's Propranolol prescription, ultimately concluding that "[g]iven the patient's significant impairment, she might even be a candidate for deep brain simulation if her tremors remain refractory." *Id*. Dr Brilla increased the Propranolol dose to 60 mg on August 14, 2015. R. 264. Dr. Brilla noted after the next follow-up visit on December 17, 2015 that Plaintiff reported her tremors had "mildly improved with propranolol." R. 269-70. Dr. Brilla increased the Propranolol dose from 60 to 80 mg. *Id*.

Plaintiff then underwent a consultative examination with Dr. K.P. Ramchandani on December 22, 2015. Plaintiff complained of constant tremors in her hands and head for the past 10 years, which made it difficult to eat or write, or to lift and carry objects over 20 pounds. She reported the tremors got worse with activity, though she did not use an assistive device and could

3

shower, eat, change clothes, and care for her personal hygiene unassisted. R. 209. On exam, Plaintiff exhibited normal strength, tremors in outstretched hands made worse with activity, and tremors when performing a finger-nose test bilaterally. However, Plaintiff was able to make a fist, pick up objects, open and close a door, oppose thumbs to fingers, and flip pages. R. 210. Dr. Ramchandani reaffirmed a diagnosis of essential tremors. R 211.

Plaintiff was in for another follow-up visit with Dr. Brilla's office on June 17, 2016. Plaintiff reported tolerating the increased Propranolol dose and that it worked better than other drugs she had tried but wanted to better control the tremors. Dr. Brilla again increased the Propranolol dose to 120 mg. R. 274-75. At the next follow up on December 9, 2016, Plaintiff was still having "bothersome" tremors, she agreed to take a second medication to help control them, and Dr. Brilla prescribed Gabapentin at a 100 mg dose alongside the Propranolol at 120 mg. R. 277-78. At her next follow-up on May 15, 2017, Plaintiff reported the new medication was "very effective" and that she and others had noted her tremors had "definitely improved." R. 282. Dr. Brilla noted that no tremors were present on examination and again increased the Gabapentin dose. *Id*.

**B. Opinion Evidence**

The only medical opinions on record are two consultative examination reports from State agency medical experts. R. 63-66, 70-75. Dr. Prasad Kareti completed the first on March 10, 2016. He opined that Plaintiff's December 22, 2015 exam with Dr. Ramchandani was "unremarkable" and noted her demonstrated ability to make a fist, pick up objects, use doors, flip pages, her full motor strength, and 5/5 grip strength at that examination. R. 64. As to Plaintiff's subjective complaints, Dr. Kareti found Plaintiff partially credible because her reported activities

4

of daily living were "excessive in degree in light of the objective findings." R. 65. He went on to opine that Plaintiff's tremors were not severe and that Plaintiff was not disabled. R. 64-65.

Dr. Rohini Mendonca wrote the second report on June 3, 2016 and agreed with Dr. Kareti that Plaintiff's tremors were not severe and that she was not disabled. R. 71-75. Dr. Mendonca cited Plaintiff's noted improvements over time using different medications, normal grip strength, reflexes, and range of motion, though noted Plaintiff's documented tremors with outstretched hands that was aggravated with activity. R. 72. Like Dr. Kareti, Dr. Mendonca found Plaintiff's subjective complaints partially consistent with the record, reasoning similarly to Dr. Kareti that Plaintiff's activities of daily living were excessive when compared to the objective findings. R. 73. He went on to opine that Plaintiff was capable of heavy work and that she could adjust to other work. R. 74-75.

**C. Plaintiff's Hearing Testimony**

Represented by counsel,[3] Plaintiff appeared for a hearing before an Administrative Law Judge ("ALJ") on September 27, 2017. R. 12. She was then 49 years old. R. 30. At the hearing, she testified about her work history, tremors, symptoms related to the tremors, and their effect on her ability to carry out everyday activities as previously discussed. R. 30-49. Among other things, Plaintiff testified that she worked for approximately six years after her tremors began. She worked in an office position at a retail business during that time, which made work difficult though she was never cited for poor performance. R. 44. She testified that any physical activity exacerbated her tremor symptoms, lifting more than 10 pounds caused her hands to shake, she has difficulty manipulating small objects, and had "no control" of her hands when reaching overhead or in front of her. R. 35-38. The tremors made it difficult to perform household chores

---

[3] Plaintiff is represented by a different attorney on this appeal. R. 15.

and on bad days she would require assistance from her sister or husband with things like grocery shopping, laundry, and cooking food. R. 34-40. She felt uncomfortable and not confident in her driving due to her tremors so usually asked her sister to drive, though she agreed that the tremors affected her ability to hold on to the steering wheel "very little." R. 43. She reported taking Gabapentin for her symptoms, that she tends to develop a tolerance to the medication over time, but that medication did improve (though not completely resolve) her tremors; specifically, she agreed with her attorney's characterization that the Gabapentin currently "makes [the tremor] better, but you still have it." R. 42.

**D. Vocational Expert Testimony**

Vocational expert Kathleen Doehla testified that a person of Plaintiff's age, education, and work experience could perform her past job as a pharmacy technician or office clerk if limited to medium or light work with frequent fingering and handling and never climbing ladders, ropes, or scaffolds. R52-54. She also identified additional jobs this hypothetical individual could perform. *Id*. She later testified that all possible jobs would be eliminated for a person of Plaintiff's age, education, and work experience if they were also limited to performing light work with occasional[4] handling and fingering. R54-56.

## II. PROCEDURAL BACKGROUND AND ALJ'S DECISION

Plaintiff filed an application for disability benefits on October 13, 2015, alleging disability caused by hand tremors, a thyroid disorder, and hypertension. R. 60-67, 149, 168-70. She alleged an onset date of May 15, 2015 and that she stopped working on that same date. R. 12, 149. Plaintiff's application was denied initially and upon reconsideration.

---

[4] Occasional is defined as occurring from "very little up to one-third of the time." SSR 83-10, 1983 SSR LEXIS 30, at *13.

After the September 27, 2017 hearing, the ALJ followed the five-step evaluation process set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and found that Plaintiff was not disabled. The ALJ specifically found the following: (1) at Step One, that Plaintiff had not engaged in any substantial gainful activity starting from her alleged onset date, May 15, 2015, R. 14; (2) at Step Two, that Plaintiff had "the following severe impairment: hand tremors," *id.* ; (3) at Step Three, that Plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment, R. 15; (4) that Plaintiff had the residual functional capacity to perform medium work except that she could lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently, sit, stand, and walk for 6 hours in an 8 hour work day, frequently perform handling and fingering bilaterally, and could never climb ladders, ropes, or scaffolds; *id.*; (5) at Step Four, that Plaintiff could perform her past relevant work as a pharmacy technician (DOT 074.382-010) or office clerk (DOT 219.362-010) R. 18; and (6) at Step 5 that, regardless of Plaintiff's ability to perform past relevant work, other jobs exist in significant numbers in the national economy that Plaintiff could perform given her impairments, including industrial cleaner (DOT 381.687-018); bagger (DOT 920.687-058), and store laborer (DOT 922.687-058).

### III. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner [], with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The Commissioner's denial of disability is conclusive when supported by substantial evidence. *Id.*; *Skinner v. Astrue*, 487 F.3d 836, 841 (7th Cir. 2007). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison*

7

*Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The Court may not displace the ALJ's judgment by reconsidering facts and evidence, reweighing evidence, or by making independent credibility determinations. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Similarly, even if reasonable minds could differ on whether a claimant is disabled, a reviewing court must affirm the ALJ's decision if it is adequately supported. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).

However, review of an ALJ's decision is not a rubber stamp of approval. *Biestek*, 139 S. Ct. at 1154 ("mere scintilla" not substantial evidence). The court must critically review the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The ALJ's conclusion will not be affirmed where he fails to build a logical bridge between the evidence and his conclusion, even if evidence exists in the record to support that conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (where opinion is "so poorly articulated as to prevent meaningful review" the case must be remanded). Additionally, courts may not build a logical bridge for the ALJ. *Mason v. Colvin*, 13 CV 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

## IV. ANALYSIS

### A. RFC

A claimant's RFC is the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); *Young v. Barnhartt*, 362 F.3d 995, 1000 (7th Cir. 2004). The RFC is based on all relevant evidence in the record, including medical opinions and the claimant's testimony. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir.

2007). As with any other conclusion he makes, an ALJ must minimally articulate his reasoning and tie the evidence to his ultimate RFC determination. *Bjornson v. Astrue*, 671 F.3d 640, 676 (7th Cir. 2012).

Plaintiff argues the ALJ failed to provide a rationale or logical bridge supported by substantial evidence for her RFC. Specifically, she argues that the ALJ relied on no medical opinions or evidence when limiting Plaintiff to (1) "frequent"[5] handling and fingering and (2) lifting and carrying up to 50 pounds occasionally and 25 pounds frequently. Dkt. 18 at 4-6; Dkt. 25 at 1-5. Relatedly, she argues the ALJ failed to adequately explain why he assigned the limitations he ultimately deemed necessary.

This is a quizzical argument. As previously discussed, Dr. Kareti evaluated the medical record before opining that Plaintiff is not disabled. Specifically, Dr. Kareti noted Dr. Ramchandani's consultative examination report that Plaintiff could make a fist, pick up objects, open and close a door, oppose thumbs to fingers, and flip pages despite her tremors, and concluded that Plaintiff had *no* severe impairments. On reconsideration Dr. Mendonca agreed with these findings and more specifically opined that, in RFC terms, Plaintiff could perform "heavy"[6] work. Contrary to Plaintiff's claim that the ALJ "did not rely on any medical opinions," Dkt. 25 at 4, the ALJ relied on the opinions of Dr. Kareti and Mendonca, though he assigned them both only "partial weight" because after evaluating the record evidence (and in consideration of Plaintiff's complaints therein) he believed it supported some limitations related to Plaintiff's hand tremors. R. 16-17. Notably, Plaintiff does *not* argue that the State agency opinions are incorrect, unsupported by the record, outdated, that the ALJ improperly weighed

---

[5] Frequent is defined as occurring one- to two-thirds of the time. SSR 83-10, 1983 SSR LEXIS 30, at *14.
[6] Heavy work means lifting and carrying no more than 100 pounds with frequent lifting or carrying of 50 pounds. 20 C.F.R. § 404.1567(d).

them, or that the ALJ should have solicited another expert's opinion, so she forfeits those arguments. *See, e.g.*, *Rogers v. Barnhart*, 446 F. Supp. 2d 828, 851 (N.D. Ill. 2006). In summary, the ALJ did, and was entitled to, rely on these opinions. *Rice v. Barnhart*, 384 F.3d 363, 370–71 (7th Cir. 2004) (ALJ entitled to rely on State agency consultative doctor's opinion in part because "there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."); *see also Frazee v. Berryhill*, 733 F. App'x 831, 834 (7th Cir. 2018) ("The ALJ cannot be faulted for not 'playing doctor' and independently drawing a different [disability] conclusion from [the doctor's] tests."). Plaintiff also fails to point to any other opinion suggesting, or a doctor's note recommending, any additional required limitations, despite Plaintiff being represented by counsel at the hearing before the ALJ and bearing the burden of proof at the first Four Steps of the disability analysis. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) (claimant represented by counsel at the administrative hearing "is presumed to have made her best case before the ALJ") (citations omitted). Rather, Plaintiff faults the ALJ for assigning limitations in her RFC when every doctor to opine on the issue believed no limitations were necessary.[7] Essentially, Plaintiff argues the ALJ erred by placing more—not fewer— restrictions on Plaintiff's RFC. Again, this is a quizzical argument.

The Court disagrees. First, the ALJ did not fail to account for Plaintiff's tremors in the RFC. Instead, the ALJ limited Plaintiff to "frequent" handling and fingering, meaning she could handle and finger for less than an entire workday (although both doctors opined she could work for an entire day with no such limitation) and limited Plaintiff to medium work rather than "heavy" work. R. 15. Both limitations directly relate to Plaintiff's claims that her hands shake when holding or manipulating objects and working with her hands. After all, they represent *some*

---

[7] Presumably, if the ALJ fully adopted the medical opinions of record, the ALJ would have provided Plaintiff *no* limitations in the RFC.

10

limitations to handling, manipulating, lifting, and moving objects with the hands rather than *no* limitations.

Second, as to Plaintiff's argument that by only partially crediting the State agency medical opinions the ALJ did not rely on *any* evidence when formulating the RFC, Dkt. 25 at 4, the Court disagrees. The ALJ partially relied on the expert medical opinions—he did not ignore them completely. Ultimately, the determination of a claimant's disability is left to the Commissioner. 20 C.F.R. § 404.1527(d). And although an ALJ must consider the entire record, he is not obligated to choose any specific medical opinion to rely on. *Schmidt*, 496 F.3d at 833. Therefore, an ALJ does not invariably commit error if, after considering the rest of the record, he finds a claimant more limited than any doctor of record opines necessary. *See, e.g.*, *Poole v. Colvin*, No. 21 C 10159, 2016 U.S. Dist. LEXIS 40005, at *28 (N.D. Ill. Mar. 28, 2016) (" . . . an ALJ does not err when he finds a claimant to have an RFC which is more limited than that ascribed by the medical experts.") (citing *Castile*, 617 F.3d at 929).[8] In this case the ALJ committed no error by finding Plaintiff more limited than any medical experts opined necessary because the ALJ partially relied on the only medical opinions available when making that determination.

Third and relatedly, to the extent Plaintiff argues the ALJ failed to adequately explain the specific limitations he found necessary, the Court disagrees. The ALJ partially relied on the two expert opinions described above, one of which opined that Plaintiff is capable of heavy work with no restrictions. R. 74-75. And the Court can trace the ALJ's reasoning for partially

---

[8] This is not a situation necessitating remand where, for instance, the ALJ found Plaintiff *less* limited than the only medical experts opined necessary. *See, e.g.*, *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010). Nor is it a situation where the ALJ explicitly rejected the only medical opinions available and therefore signaled that he did not intend for the opinions to support the RFC. *See, e.g.*, *Papaleo v. Berryhill*, No. 17 C 6096, 2018 U.S. Dist. LEXIS 184323, at *14-15 (N.D. Ill. Oct. 29, 2018).

discounting the medical opinions and assigning some limitations: despite the experts' opinions, the ALJ gave more (though not absolute) credence to Plaintiff's own testimony and treatment records regarding her hand limitations than the experts thought was warranted, which is permissible. R. 17 (concluding that the "treatment records do support some limitations caused by the claimant's hand tremors" and assigning partial weight to the expert reports); *see, e.g.*, *Cabrera v. Astrue*, No. 10 C 4715, 2011 U.S. Dist. LEXIS 42624, at *34-35 (N.D. Ill. Apr. 20, 2011). Plaintiff identifies no basis for remand absent any medical evidence calling for more functional limitations to contradict the expert opinions, which opined no limits were necessary.

Regardless, by arguing the ALJ erred by failing to adequately explain *why he found any limitations necessary at all*, Plaintiff implies that more limitations are warranted. In support, Plaintiff cites two doctor visits where she demonstrated tremors of "at least" moderate severity, points out that her medication doses were increased over time as she gained a tolerance to Gabapentin, and identifies her testimony where she complained of constant, regular tremors. Dkt. 18 at 6. But the ALJ recognized that Plaintiff exhibited "moderate" tremors and explicitly cited, discussed, and considered the evidence indicating increased doses of medications over time before formulating the RFC. R. 16-17. And again, crucially, Plaintiff points to no doctor's indication or suggestion that limitations were required. Nor does she explain what specific functional limitations the ALJ should have found necessary based on the medical record.[9] Ignoring the fact that no doctor of record called for any functional limitations, Plaintiff focuses on and cites to her own testimony and her reports to various doctors regarding the limiting effects of her tremors. Dkt. 18 at 6-7. But as discussed below, the ALJ appropriately (though

---

[9] Though Plaintiff correctly points out the VE's testimony that no jobs would be available for Plaintiff had the ALJ limited her to "occasional" handling and fingering, Dkt. 18 at 5-7, she points to no evidence that this limitation was needed aside from her own testimony, which is discussed below.

imperfectly) evaluated Plaintiff's subjective complaints. Therefore, Plaintiff identifies no error in the RFC compelling remand.

**B. Plaintiff's Subjective Complaints**

After an ALJ determines a claimant has a medically determinable impairment that could reasonably cause a claimant's alleged symptoms, he must evaluate the intensity and persistence of those symptoms to determine their effect on the claimant's ability to perform work activities. *Tenhove v. Colvin*, 927 F. Supp. 2d 557, 574 (E.D. Wis. 2013) ("[O]nce the ALJ has found that the Claimant suffers from impairments that could reasonably cause her symptoms, [s]he may not disregard her allegations just because they are not fully supported by the medical evidence.") (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)); SSR 16-3p, 2016 SSR LEXIS 4. When evaluating a claimant's subjective symptoms, an ALJ must consider a variety of factors, including daily activities, the medications taken, functional limitations, allegations of pain, aggravating factors, objective medical evidence, and daily activities. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 SSR LEXIS 4, at *4. Because "the ALJ is in the best position to determine the credibility of a witness," courts give deference to an ALJ's evaluation of a claimant's subjective complaints. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008); *see also Biestek*, 139 S. Ct. at 1157. A reviewing court will reverse an ALJ's subjective complaint analysis if it is so lacking in analysis or support that it is "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Dawn P. v. Berryhill*, No. 17 C 4707, 2019 U.S. Dist. LEXIS 12725, at *9-11 (N.D. Ill. Jan. 28, 2019) (explaining that "patently wrong" standard of review applies after issuance of SSR 16-3p). Finally, "[a]n erroneous credibility finding requires remand

unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

The Court first briefly addresses Plaintiff's argument that the ALJ employed an improper "complete consistency" standard of review when he wrote that Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." Dkt. 18 at 7-8. Courts in the Northern District of Illinois have regularly rejected this argument, explaining that use of the phrase "not entirely consistent" does not, by itself, show the ALJ substituted an incorrect "complete consistency" standard of review when evaluating a claimant's subjective complaints. *See, e.g.*, *Charah C. v. Saul*, No. 18 C 3261, 2019 U.S. Dist. LEXIS 124594, at *26-28 (N.D. Ill. July 26, 2019); *Michelle G. v. Berryhill*, No. 18 C 408, 2019 U.S. Dist. LEXIS 91978, at *19 (N.D. Ill. June 3, 2019); *Dawn P.*, 2019 U.S. Dist. LEXIS 12725, at *9-11; *cf. Britt v. Berryhill*, 889 F.3d 422, 425-26 (7th Cir. 2018). Indeed, after summarizing Plaintiff's subjective complaints, the ALJ used boilerplate language in his decision. R. 16. But although such boilerplate may lead a court to find that an ALJ has failed to provide a logical bridge and explain his reasoning, such language does not justify a remand where it is "followed by an explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). In this case the ALJ provided more explanation for his consistency findings beyond the language Plaintiff identifies. R. 15-18. Therefore, if the ALJ's explanation is adequate, the use of boilerplate language does not require remand.

The ALJ summarized Plaintiff's subjective complaints before finding them "not entirely consistent" with the record "for the reasons explained in this decision." R. 16. For instance, he discussed Plaintiff's complaints that her hand and head tremors are constant and make it impossible to work, make it difficult to use her hands to pick up objects, write, cook, eat, or do

14

laundry, and cause her voice to shake. He also described Plaintiff's reported daily activities, such as meal preparation, cleaning her house, doing laundry, brushing her teeth, combing her hair, dressing, driving, and performing personal care. R. 16-18, 34-36, 176-86, 209. Reading the decision as a whole, *Rice*, 384 F.3d at 370 n.5, the Court discerns three reasons the ALJ gave to support his consistency determination: (1) Plaintiff's doctors reported relatively normal examination results and did not suggest any functional limitations despite Plaintiff's complaints, (2) recent treatments notes suggest Plaintiff's tremors have substantially improved, and (3) Plaintiff's daily activities are inconsistent with her alleged limitations. R. 15-18.

Plaintiff argues that the ALJ erroneously equated her ability to perform household tasks with an ability to work full time, and the Court agrees. Dkt. 18 at 9-10. The ALJ's analysis of Plaintiff's daily activities is found in the following paragraph:

> In sum, the above residual functional capacity assessment is supported by the treatment records. Although the claimant experienced "moderate" tremors in her upper extremities, brain MRIs are normal and the physical examinations performed by the claimant's doctors fail to suggest any limitations that would preclude medium exertional work activities. While the claimant may have some ongoing hand limitations, I note that recent treatment records suggest that her tremors have mostly resolved with use of her medications. However, even with her "moderate" tremors, the claimant has been able to perform her personal care and activities of daily living, with few limitations. As a result, the claimant is capable of performing the restricted range of medium work as set forth in the residual functional capacity.

R. 17-18. While an ALJ may compare a claimant's daily activities against her alleged limitations to assess the consistency of those allegations, see 20 C.F.R. § 404.1529(c)(3)(i); *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016), the ALJ in the last two sentences of his analysis directly equated Plaintiff's ability to perform daily activities with an ability to work full time, and that comparison is impermissible. *See Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016). This continual mistake by ALJs is really troubling. It is just another example in a long list of errors that ALJs refuse to correct. The ALJ also failed to describe how any of Plaintiff's limited

15

daily activities directly reflect an ability to perform medium work. Aside from summarizing the medical record, the ALJ provided no examples or analysis to support his conclusion that Plaintiff's daily activities were inconsistent with her alleged symptoms. *See* SSR 16-3p. But a summary of the medical record is not an analysis. And although on appeal the Commissioner points out some inconsistencies between Plaintiff's reported daily activities the alleged severity of her symptoms,[10] it is up to the ALJ to explain his reasoning and tie the record he summarized to his conclusions. Therefore, absent sufficient explanation as to these perceived inconsistencies, the ALJ was not permitted to rely on this justification to support his evaluation of Plaintiff's subjective complaints.

However, an ALJ's analysis of subjective complaints need not be perfect to avoid being labelled "patently wrong." *See, e.g.*, *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012); *Taylor v. Berryhill*, No. 17 C 9098, 2018 U.S. Dist. LEXIS 180276, at *16-18 (N.D. Ill. Oct. 22, 2018). And as discussed below, the additional reasons cited by the ALJ are supported by substantial evidence and the Court can trace the ALJ's reasoning. Therefore, the ALJ's analysis of Plaintiff's daily activities, though error, is harmless.

The ALJ appropriately considered Plaintiff's recent medical improvement as being inconsistent with her claims of constant, disabling tremors. R. 15-18. Plaintiff argues that the ALJ erred when noting that Plaintiff's "tremors had resolved" and that he overlooked the fact that Plaintiff continued to experience tremors despite her medication. Dkt. 18 at 10. This argument is meritless. First, the ALJ explicitly found Plaintiff's tremor to be an ongoing severe impairment, which is wholly inconsistent with the suggestion that he found Plaintiff's tremors

---

[10] For instance, despite her complaints of constant tremors, in October 2015 Plaintiff reported being able to put in contact lenses unassisted every day, which seemingly requires a steady hand. Dkt. 22 at 10; R. 177, 182.

had completely resolved. Second, the ALJ reasoned that based on recent medical reports, Plaintiff's tremors had "significantly reduced" and "mostly" resolved through medication. R. 15, 17. This is a reasonable inference to draw from the recent medical notes. The ALJ cited to Plaintiff's testimony and reports to her doctors acknowledging such improvement, particularly notes from two recent doctor visits: the first note from a visit in February 19, 2017, where Plaintiff exhibited a full range of motion with no mention of tremor issues R. 17, R. 253; the second from a May 15, 2017 visit where Plaintiff reported her tremors had "definitely improved" and where Plaintiff exhibited no tremors on examination. R. 17, 282.

     Plaintiff argues the ALJ failed to consider her hearing testimony that she experiences constant tremors, has difficulty manipulating small objects, medication does not completely resolve the tremors, physical activity makes the tremors worse, and that she develops a tolerance to medication over time. Dkt. 18 at 7-8; R. 34-42. However, the ALJ noted that Plaintiff exhibited tremor symptoms to various providers throughout her treatment and her "ongoing hand limitations" when assigning limitations in the RFC. R. 16-17, 209-11, 250-51, 269-70. And as discussed above, the ALJ gave partial weight to the medical opinions on record opining Plaintiff had no functional limitations. That the ALJ limited Plaintiff's RFC to a lesser degree than these medical experts believed necessary also indicates that he considered and credited Plaintiff's testimony that she continues to have tremor related symptoms and that they had not fully resolved. *Castile*, 617 F.3d at 929 ("It was because of and not in spite of [Plaintiff's] testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on record."); *Schmidt*, 496 F.3d at 844. The ALJ properly considered Plaintiff's recent medication treatment and did not ignore Plaintiff's complaints of ongoing tremor symptoms.

17

Finally, Plaintiff does not address the ALJ's reasoning that, despite Plaintiff's exhibited moderate tremors and her complaints of constant disabling tremors, MRIs and physical examinations were otherwise largely normal and Plaintiff's doctors never suggested any functional limitations were necessary during those exams. R. 15 (noting physical exams indicated few, if any, functional limitations), 17, 246-48, 250-51, 310-11, 320-22. The fact that none of Plaintiff's doctors opined that she was unable to work (or, in this case, suggested that she required any functional limitations caused by tremors at all) is a valid reason to discount a claimant's subjective complaints. *See Castile*, 617 F.3d at 930 ("illuminating and persuasive on its face" that none of claimant's doctors opined she was unable to work); *Rice*, 384 F.3d at 370. This is particularly true here where the ALJ partially relied on the opinions of Drs. Kareti and Mendonca, who evaluated the medical records as of December 2015 and June 2016 respectively and came to the same conclusion. R. 63-66, 70-75. The ALJ's analysis of Plaintiff's subjective complaints, though short and imperfect, is not "patently wrong."

## V. CONCLUSION

For those reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

Date: June 8, 2020                                  By: _____
                                                    Iain D. Johnston
                                                    United States Magistrate Judge